NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PAUL F. RATTI,                           :
                                         :     Civil Action No. 03-3175 (GEB)
                    Petitioner,          :
                                         :
            v.                           :     **OPINION**
                                         :
ROY L. HENDRICKS,                        :
Administrator, et al.,                   :
                                         :
                    Respondents.         :

RECEIVED

APR 5 2006

AT 8:30 _____ □
WILLIAM T. WALSH
CLERK

**APPEARANCES:**

Petitioner pro se
Paul F. Ratti
#238910
ZR-249
NEW JERSEY STATE PRISON
P.O. BOX 861
TRENTON, NJ 08628

Counsel for Respondents
Emil P. Herman, Esq.
Assistant Prosecutor
Mercer Co. Prosecutor's Ofc.
Mercer County Courthouse
Broad and Market Streets
Trenton, NJ 08650

**BROWN, JR.**, Chief Judge

     Petitioner Paul F. Ratti, a prisoner currently confined at
the New Jersey State Prison in Trenton, New Jersey, has submitted
a petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254.  The respondents are Administrator Roy L. Hendricks and
the Attorney General of New Jersey.

     For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

The relevant facts are set forth in the opinion of the

Superior Court of New Jersey, Appellate Division, on Petitioner's

direct appeal.[1]

> In a jury trial, defendant was found guilty of
> felony murder, contrary to N.J.S.A. 2C:11-3a(3);
> robbery, contrary to N.J.S.A. 2C:15-1; theft by
> unlawful taking, contrary to N.J.S.A. 2C:20-3a; and
> possession of a shotgun with purpose to use it
> unlawfully against another person, contrary to N.J.S.A.
> 2C:39-4d.  At a sentencing hearing, the judge merged
> all charges with the felony murder and sentenced
> defendant to a custodial term of 30 years, during which
> he shall not be eligible for parole.
>
> Defendant has appealed, and in a brief filed on
> his behalf, it is contended that:
>
> I.   THE JURY'S VERDICTS WERE AGAINST THE WEIGHT OF THE
>      EVIDENCE SINCE THE STATE CLEARLY FAILED TO
>      ESTABLISH BEYOND A REASONABLE DOUBT THE IDENTITY
>      OF THE DEFENDANT AS THE PERPETRATOR OF THE CRIMES
>      IN QUESTION.   (NOT RAISED BELOW).
>
> . . .
>
> Based on the evidence presented during the trial,
> the jury could have found that on December 28, 1989,
> James Steele was robbed, and during the commission of
> the robbery, Steele's girlfriend Tomeka Nicole Brown
> was killed.  The crimes occurred in front of a crack-
> cocaine house located at 532 Princeton Avenue, Trenton,
> New Jersey.
>
> During the early morning of December 28, 1989,
> Steele and Elizabeth London sold cocaine on Sweets

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

Avenue in Trenton, which is located in the same area as
532 Princeton Avenue.  In between selling drugs, Steele
and London would visit with friends who lived in the
crack house located at 532 Princeton Avenue.  While
Steele and London were selling cocaine, an individual,
later identified as defendant, approached Steele and
London with a potential buyer of cocaine.  Steele made
a sale to the potential buyer and gave him change from
a $100 bill.  Defendant then asked Steele for some
cocaine for his use in consideration for introducing a
new buyer.  When Steele gave defendant only a small
amount, defendant was upset and was offended.  Steele
and London returned to the crack house at about 4:00
a.m.

     Approximately two hours later Steele and London
decided to return to Sweets Avenue to make more drug
sales.  The plan was for Steele to warm up the car
first, and London would come to the car later carrying
the drugs.  At or about the time Steele was attempting
to open the door to the car, a man suddenly appeared
brandishing a shotgun.  That man was identified as
defendant.  Defendant demanded that Steele "give it
up," and Steele replied, "I ain't got it, she [London]
got it."  Defendant then told London "come here bitch,"
but London ran back into the crack house and told
friends that Steele was being robbed.  A number of
people from the crack house came outside and hollered
to Steele not to give the robber anything because the
gun was not real.

     As people from the crack house were yelling to
Steele not to depart with his drugs or money, Tomeka
Brown walked across the street in the direction of
where the robbery was taking place.  As Brown walked
across the street, defendant shot her in the face.
After shooting Brown, defendant told Steele, "I'm not
playing, give me the money, give it up."  The robber
took money from Steele and ran away from the scene.
Brown died almost immediately from a shotgun blast to
the head.

     We reject defendant's assertion that the State
failed to establish beyond a reasonable doubt that he
was the person who perpetrated the crime.  Steele,
London and Brenda Green all identified defendant as the
perpetrator.  In addition, Tina Kelsey, who lived near
the crack house, testified that at 5:50 a.m. on

3

December 28, 1989, she left her house to take her
boyfriend to work.  When she was leaving, she noticed a
male partially fitting defendant's description standing
along the side of her house, which was next to a mini-
park.  Terrence Williams also testified that before the
crimes were committed, he saw a male matching
defendant's description run through the mini-park
toward the place where the crimes occurred.  Based on
this evidence, if believed by the jury, the State
sustained its burden of proving beyond a reasonable
doubt that defendant was the perpetrator of the felony
murder. ...

The judgment of conviction is affirmed.

(R13, Opinion of Appellate Division, Jan. 29, 1993.)  On March

25, 1993, the Supreme Court of New Jersey denied certification.

Thereafter, Petitioner filed a motion for post-conviction

relief.  After a hearing, the trial court denied relief, as

follows in pertinent part.

## II.  PETITIONER'S ASSERTIONS
### POINT I

DEFENDANT WAS DENIED A FAIR TRIAL BY THE PROSECUTOR'S
STRIKING OF THREE BLACK JURORS

Petitioner contends that the Prosecutor's striking
of three black jurors constituted a violation of State
v. Gilmore, 103 N.J. 508 (1986).

Petitioner concedes in his brief that there were
valid reasons for excluding two of the three black
jurors.  However, regarding the third black juror,
Petitioner contends that the prosecution's "personal
reaction" was insufficient grounds for dismissal.

### POINT II

DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL WHEN COUNSEL FAILED TO RAISE THE GILMORE ISSUE
ON APPEAL

4

Petitioner contends that he was denied effective assistance of appellate counsel when counsel failed to raise the <u>Gilmore</u> issue on appeal.

## POINT III

DEFENDANT WAS DENIED A FAIR TRIAL AS THE RESULT OF A CONFLICT OF INTEREST, WHICH FURTHER RESULTED IN A VIOLATION OF HIS RIGHT TO PRESENT A WITNESS UNDER THE SIXTH AMENDMENT COMPULSORY PROCESS

Petitioner contends that since he and a potential witness, John Love, were both being represented by the Mercer Regional Public Defender's Office, a conflict of interest existed.  He further contends that counsel's loyalties were divided between the potential witness and him.  Petitioner requested an evidentiary hearing to explore the conflict issue.

## POINT IV

DEFENDANT WAS DENIED HIS RIGHT OF EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION OF THE NEW JERSEY AND UNITED STATES CONSTITUTION

Petitioner argues ineffective assistance of counsel predicated upon counsel's failure to request a <u>Wade</u> hearing.  Petitioner bases this allegation on two grounds.  First, Petitioner asserts that counsel's failure to raise the <u>Wade</u> issue was clearly ineffective since there was a serious issue as to the method by which he was identified by witnesses.  Second, Petitioner asserts that counsel was ineffective in that counsel failed to interview witnesses prior to their court appearances.  Petitioner requests, on these grounds, an evidentiary hearing and a new trial.

. . .

## POINT VI

DEFENDANT WAS DENIED A FAIR TRIAL BY NOT BEING APPRISED OF A JURY QUESTION AND THE COURT'S RESPONSE

Petitioner requested an evidentiary hearing to determine the contents of a question and answer between the jury and the judge during the jury's deliberation.

. . .

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Post-Conviction Relief is New Jersey's analogue to the federal writ of habeas corpus.  State v. Preciose, 129 N.J. 451, 459 (1992).  Rule 3:22-2 provides the grounds for post-conviction relief: (a) "a denial in the conviction proceedings" of a defendant's State or Federal Constitutional rights; (b) a sentencing court's lack of jurisdiction; (c) an unlawful sentence; and, (d) any habeas corpus, common law, or statutory grounds for collateral attack.  A Petitioner must establish the right to such relief by a preponderance of the credible evidence.  Post-conviction relief is neither a substitute for direct appeal, R. 3:22-3, nor an opportunity to re-litigate cases already decided on the merits.  R. 3:22-5.  Ibid.  Consequently, a petitioner is barred from post-conviction relief under Rule 3:22-4 if he could have but did not raise the claim in a prior proceeding, unless he satisfies one of the following exceptions:

> (A)   that the ground for relief not previously asserted could not reasonably been raised in any prior proceeding; or
>
> (B)   that enforcement of the bar would result in the fundamental injustice; or
>
> (C)   that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.

In this case, Petitioner's entire petition is barred on these grounds.

(R14, PCR Opinion.)  Nevertheless, for "purposes of clarity," the

PCR Court addressed the issues raised and rejected all of them on

the merits also.

Petitioner appealed the denial of post-conviction relief,

alleging ineffective assistance of post-conviction counsel.  The

Appellate Division affirmed the denial of relief by summary

6

Opinion entered March 13, 1998.  (R.15.)  The Supreme Court of
New Jersey denied certification on June 16, 1998.  (R.15.)

Petitioner then filed a petition for writ of habeas corpus,
under 28 U.S.C. § 2254, which this Court dismissed for failure to
exhaust state remedies.  See Ratti v. Hendricks, Civ. No. 99-2698
(GEB).

Returning to state court, Petitioner filed a second motion
for post-conviction relief on October 25, 2000, nine years after
his original conviction, claiming that he had been denied
effective assistance of trial counsel where counsel failed to
investigate his medical condition, specifically recent surgery to
his Achilles tendon, which Petitioner argued prevented him from
being the person who committed these crimes.  (R.17.)  The PCR
court rejected this second PCR motion as untimely under Rule
3:22-12, which provides that "[a] petition to correct an illegal
sentence may be filed at any time.  No other petition shall be
filed pursuant to this rule more than 5 years after rendition of
the judgment or sentence sought to be attacked unless it alleges
facts showing that the delay beyond said time was due to
defendant's excusable neglect."  The court noted that "only
exceptional circumstances will permit relief from the bar."
(R.17, Letter Opinion dated January 8, 2001, quoting State v.
McQuaid, 147 N.J. 464, 485 (1997).)

The Appellate Division affirmed the denial of relief on the grounds that the second PCR petition was time-barred and also on the merits. (R.18., Appellate Division Opinion dated September 23, 2002.) The Supreme Court of New Jersey denied certification by order entered January 30, 2003. (R.18.) Petitioner then returned to this Court with a new Petition for relief under § 2254.

Here, Petitioner asserts the following claims: (a) the jury's verdict was against the weight of the evidence, (b) the prosecutor's exclusion of three black jurors deprived Petitioner of a fair trial, (c) counsel's failure to investigate Petitioner's medical condition deprived him of effective assistance of counsel, (d) a conflict of interest deprived Petitioner of effective assistance of counsel and of his right to present witnesses, (e) the judge's response to a jury question during deliberations deprived Petitioner of his right to be present at all critical stages of the trial and of his right to effective assistance of counsel, (f) Petitioner's claims are not time-barred, (g) denial of Petitioner's PCR petition was a fundamental injustice, (h) Petitioner was deprived of effective assistance of trial counsel, PCR counsel, and appellate counsel, (i) the trial court erred in refusing to conduct an evidentiary hearing on Petitioner's PCR claims.

8

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an

9

unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case," and may involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
Id. at 409.  In determining whether the state court's application
of Supreme Court precedent was objectively unreasonable, a habeas
court may consider the decisions of inferior federal courts.
Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.
Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims
presented to, but unadjudicated by, the state courts, however, a
federal court may exercise pre-AEDPA independent judgment.  See
Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000),
cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL

10

1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);

11

United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),
cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

Petitioner asserts the following claims:  (a) the jury's
verdict was against the weight of the evidence, (b) the
prosecutor's exclusion of three black jurors deprived Petitioner
of a fair trial, (c) counsel's failure to investigate
Petitioner's medical condition deprived him of effective
assistance of counsel, (d) a conflict of interest deprived
Petitioner of effective assistance of counsel and of his right to
present witnesses, (e) the judge's response to a jury question
during deliberations deprived Petitioner of his right to be
present at all critical stages of the trial and of his right to
effective assistance of counsel, (f) Petitioner's claims are not
time-barred, (g) denial of Petitioner's PCR petition was a
fundamental injustice, (h) Petitioner was deprived of effective
assistance of trial counsel, PCR counsel, and appellate counsel,
(i) the trial court erred in refusing to conduct an evidentiary
hearing on Petitioner's PCR claims.

A.  Procedurally-defaulted Claims

Respondents contend that the claims asserted in the Petition
in Paragraphs 12(b) (peremptory strikes), 12(c) (counsel's
alleged failure to investigate Petitioner's medical condition),
12(d) (trial counsel's alleged conflict of interest), and

12

12(e) (absence during trial court's response to jury question)
are procedurally defaulted.

> A procedural default occurs when a prisoner's federal
> claim is barred from consideration in the state courts
> by an "independent and adequate" state procedural rule.
> See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d
> Cir. 1996)].  Federal courts may not consider the
> merits of a procedurally defaulted claim unless the
> applicant establishes "cause" to excuse the default and
> actual "prejudice" as a result of the alleged violation
> of the federal law or unless the applicant demonstrates
> that failure to consider the claim will result in a
> fundamental "miscarriage of justice."  Coleman v.
> Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115
> L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

On habeas review of state prisoner claims, a federal court
"will presume that there is no independent and adequate state
ground for a state court decision when the decision 'fairly
appears to rest primarily on federal law, or to be interwoven
with the federal law, and when the adequacy and independence of
any possible state law ground is not clear from the face of the
opinion.'"  Coleman, 501 U.S. at 734-35 (quoting Michigan v.
Long, 463 U.S. 1032, 1040-41 (1983)).[2]  Only a "firmly
established and regularly followed state practice" is adequate to
prevent subsequent habeas review in federal court.  James v.
Kentucky, 466 U.S. 341, 348-351 (1984).  See also Lee v. Kemna,

---

[2] A state court's reliance on a procedural bar as an
alternate holding is sufficient to trigger the "cause" and
"prejudice" test.  See United States ex rel. Caruso v. Zelinsky,
689 F.2d 435, 440 (3d Cir. 1982).

13

534 U.S. 362, 376 (2002) ("Ordinarily, violation of 'firmly established and regularly followed' state rules ... will be adequate to foreclose review of a federal claim." (citations omitted)).  Generally speaking, "[a] state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate." Cabrera v. Barbo, 175 F.3d 307, 312 (3d Cir. 1999) (citations omitted).

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule.  See Coleman, 501 U.S. at 752 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation.  Coleman, 501 U.S. at 754.  Neither a pro se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard.  Murray at 485-87.  Failure of the state court to "bend the rules" for a pro se litigant is not cause.  Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir. 1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'"  Murray v. Carrier, 477 U.S. 478, 494

14

(1986) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).  In the context of an ineffective assistance claim, the Court of Appeals for the Third Circuit has held that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."  <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 670 (3d Cir. 1996).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  <u>Carrier</u>, 477 U.S. at 496. "Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him."  <u>Werts</u>, 228 F.3d at 193 (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 326 (1995)).

Here, the State courts determined that Petitioner's first petition for post-conviction relief was barred under New Jersey Court Rule 3:22-4, which bars claims that could have been raised on direct appeal, and that Petitioner's second petition for post-conviction relief was time-barred under N.J.Ct.R. 3:22-12.  In both instances, the State courts determined that Petitioner had failed to establish circumstances sufficient to overcome the bar.

Petitioner does not contend that the time-bar is anything but a "firmly established and regularly followed state practice," and State case law suggests that the rule is firmly established and regularly followed.  See, e.g., State v. Dugan, 289 N.J. Super. 15 (App. Div.), certif. denied, 145 N.J. 373 (1996); State v. Dillard, 208 N.J. Super. 722 (App. Div.), certif. denied, 105 N.J. 527 (1986).  Thus, the State courts denied relief on an independent and adequate state ground, precluding review here of Petitioner's claim that he was denied effective assistance of counsel based upon counsel's failure to investigate his medical condition, unless he can meet the "cause" and "prejudice" standard or demonstrate that failure to consider the claim will result in a miscarriage of justice.  Petitioner has failed to allege any facts suggesting that he can meet the "cause" and "prejudice" standard.  Nor has he presented any evidence suggesting that failure to consider the claim will result in a miscarriage of justice.  For example, Petitioner has failed to present an affidavit from his doctor stating that he could not have run on the day the crimes were committed, as certain witnesses testified.  Accordingly, the claim of ineffective assistance of trial counsel based upon failure to investigate Petitioner's medical condition is procedurally barred.

With respect to the claims in the first PCR petition, which were barred under Rule 3:22-4 as being claims that could have

16

been raised in a prior proceeding, Rule 3:22-4 appears to be an

independent and adequate state grounds for denying relief in most

instances.   The notable exception involves claims of ineffective

assistance of counsel.

> In previous cases we have indicated that an adequate
> procedural ground is predicated on procedural rules
> that speak in unmistakable terms.  Moreover, we have
> said that the procedural disposition must comport with
> similar decisions in other cases so there is a firmly
> established rule that is applied in a consistent and
> regular manner in the vast majority of the cases.  See
> Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997).  Of
> course, these conditions must have existed at the time
> of the state court procedural default.  See Doctor v.
> Walters, 96 F.3d 675, 864 (3d Cir. 1996).  The reason
> for these requirements is that a petitioner should be
> on notice of how to present his claims in the state
> courts if his failure to present them is to bar him
> from advancing them in a federal court.

> The Supreme Court of New Jersey in State v.
> Precise, [129 N.J. 451 (N.J. 1992), ]indicated that
> "petitioners are rarely barred from raising
> ineffective-assistance-of-counsel claims on post-
> conviction review."  609 A.2d at 1284-85.  Precise was
> consistent with New Jersey practice because the
> Appellate Division previously had stated that an
> ineffective assistance of counsel claim usually cannot
> be raised on a direct appeal because the record will
> not be adequate to support the claim.  See State v.
> Sparano, 249 N.J. Super. 411, 592 A.2d 608, 613 (1991).
> On the other hand, if the record is adequate to
> consider an ineffective assistance of counsel claim on
> direct appeal, the claim can be raised at that time.
> ...  Nevertheless to the best of our knowledge, the
> Supreme Court of New Jersey has not applied R. 3:22-4
> to bar a post-conviction relief proceeding merely
> because the petitioner did not raise a proffered
> ineffective assistance of counsel claim on direct
> appeal, even if he could have done so. ...  Thus, if
> the state trial judge at the post-conviction relief
> proceeding refused to entertain [the petitioner's]
> ineffective assistance of counsel claims because [the
> petitioner] had not advanced them on direct appeal and

17

thus had defaulted them, we would not find that the
refusal was based on an adequate state ground.

Cabrera v. Barbo, 175 F.3d 307, 312-14 (3d Cir. 1999) (dicta).
Similarly here, with respect to the ineffective assistance of
counsel claims asserted in the first PCR petition, it does not
appear that the assertion of the Rule 3:22-4 bar is an adequate
state ground precluding federal review.  Accordingly,
Petitioner's claims regarding the prosecutor's use of peremptory
challenges (claim (b)) and the exclusion from the trial court's
consideration of a jury question (claim (e)) are procedurally
barred, because the state procedural bar was based upon an
independent and adequate state ground.  Petitioner's claims of
ineffective assistance of trial and appellate counsel are not
procedurally barred.  The PCR court's alternative analysis of
these claims on the merits will be reviewed by this Court in
accordance with § 2254(d).  See § III.C., infra.

B.    Sufficiency of the Evidence

Petitioner contends that the State failed to establish his
identity as the perpetrator of the crimes.

A claim that the jury's verdict was against the weight of
the evidence raises a due process concern.  Only where, "after
viewing the evidence in the light most favorable to the
prosecution, [no] rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt" should
the writ issue.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

18

This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n.16.  See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  As noted above, state court factual determinations are presumed to be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000).

Petitioner does not dispute that the State adequately proved that the crimes were committed.  He disputes only the adequacy of the proof as to identity.  Here, the Appellate Division accurately summarized the testimony as to identity and found that the State had sustained its burden of establishing Petitioner's identity as the perpetrator beyond a reasonable doubt.  The decision of the state court is neither contrary to nor an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on this claim.

C.    Ineffective Assistance of Counsel

Petitioner contends that he was deprived of the effective assistance (1) of trial counsel based upon the alleged conflict of interest, the failure to interview witnesses, and the failure to request a Wade[3] hearing on identification evidence, (2) of appellate counsel for failure to assert a claim based upon the

---

[3] U.S. v. Wade, 388 U.S. 218 (1967).

striking of three black jurors,[4] and (3) of post-conviction counsel.[5]  The claims related to trial and appellate counsel were rejected on the merits by the PCR Court.

    A.   PETITIONER'S FIRST POINT

      Petitioner argues in Point I that the State excused jurors based upon racial bias.

      ... State v. Gilmore, 103 N.J. 508, 535 (1986), states that there is a "rebuttable presumption that the prosecution has exercised its peremptory challenges" on State Constitutional grounds.  Id.  To rebut the presumption the defendant must make a prima facie showing that "the prosecution exercised its peremptory challenges on Constitutionally impermissible grounds." To meet this burden, the defendant must first show that the potential jurors who were excluded were a part of the cognizable group within the meaning of the representative cross-section rule.  Id. at 536.  If this is established, the defendant must then show that there is a substantial likelihood that the peremptory challenges were based on group bias rather than situation-specific bias.  Id.  The Court is to consider all of the relevant circumstances in deciding whether the defendant has made prima facie case.  Id.  If the court finds that the defendant has made such a prima facie showing, the burden shifts to the prosecution to rebut the presumption of an unconstitutional action. Id. at 537.  To do so, the prosecution must provide "clear and reasonably specific" explanation of its "legitimate reasons" for exercising each of the peremptory challenges.[6]

_____

    [4] The Court construes Petitioner's general allegations of ineffective assistance of trial counsel to incorporate by reference all such claims made before the state courts.

    [5] Ineffective assistance of counsel during state or federal collateral post-conviction proceedings is not a ground for federal habeas relief.  28 U.S.C. § 2254(i).  Accordingly, Petitioner is not entitled to relief on this claim.

    [6] The standard set forth in Gilmore is at least as protective of Petitioner's right to a fair trial as is the

The record shows that during jury selection, the defense raised an objection on the basis of a <u>Gilmore</u> violation due to the State's use of peremptory challenges to excuse three black jurors. the State, until that point, had excused a total of seven jurors. Once the issue of a <u>Gilmore</u> violation was raised, the burden shifted to the State to rebut the presumption that the peremptory challenges were based on group bias. In response, the State indicated that the reason for excusing one of the three jurors was "a personal reaction" to that juror. With regard to the other two jurors, a nephew of one of the jurors had been convicted of murder, and the other juror indicated that her husband had been involved in drugs and that he had also been involved in crime as a result of dealing with drugs. At that point, the court made a finding that the State had met its burden. The court concluded that no <u>Gilmore</u> violation had occurred.

Further, Petitioner's assertion is in direct contradiction with a recent U.S. Supreme Court case dealing directly with this issue. <u>Purkett v. Elem</u>, 514 U.S. \_\_\_\_\_, 131 L.Ed.2d 834 (1995). There, the Prosecutor's explanation for striking a black juror from the panel was held to be racially neutral.

In <u>Purkett</u>, a black defendant, who was charged in state trial court with a robbery, objected to the prosecutor's use of peremptory challenges to strike two black men from the jury. The prosecutor explained that he struck the first juror because the juror had long, unkempt hair, a mustache and a beard. He struck the second juror because he had a mustache and a beard and had been involved in a robbery previously as the victim, and may have misperceptions as to the elements of a robbery. The case proceeded to the U.S. supreme Court.

---

governing federal law set forth in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986) and <u>Purkett v. Elem</u>, 514 U.S. 765 (1995). <u>See</u> <u>Gilmore</u>, 103 N.J. at 519-24 ("We previously have construed our state constitution as providing greater protection to our citizens' individual rights than accorded them under the federal constitution. ... We do so here as well. ... We refer to federal constitutional law only as establishing the floor of minimum constitutional protection.").

The Supreme Court held that, faced with a racial challenge, the proponent of a peremptory strike must give a clear and reasonably specific explanation of a legitimate reason.  A legitimate reason is not a reason that makes sense but one that does not deny equal protection.  Id. at 840.  At bar, legitimate reasons were presented and the court so found.

Accordingly, Petitioner's request to set aside the verdict and order a new trial is denied as it is procedurally barred and otherwise without merit.

B.   Petitioner's second point.

Petitioner argues in Point II of his Petition that he was denied effective assistance of appellate counsel as a result of the Gilmore issue not being raised on appeal.  Petitioner's argument that his appellate counsel was ineffective is without merit for the reason stated below. ...

In State v. Morrison, 215 N.J. Super. 540 (App. Div. 1987), the court states that the standard to be applied to a claim of ineffective assistance of counsel is the two-prong test found in Strickland v. Washington, 466 U.S. 668 (1984).  The first prong requires a defendant who claims incompetent representation to demonstrate first, that counsel's performance was deficient, i.e., that counsel's performance fell below an objective standard of reasonableness, as measured by prevailing performance and considering all of the surrounding circumstances. Id. at 690.  A defendant challenging counsel's performance must identify the particular conduct alleged to have been unreasonable and overcome a "strong presumption" that counsel acted within the wide range of reasonable professional conduct.  Id.

The second prong of the Strickland test requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Unless a defendant can make both showings, the assistance of counsel claim cannot be characterized as necessitating reversal.  Id. at 687. ...

22

In the present case, Petitioner's claim of
ineffective assistance of appellate counsel fails the
first prong of the <u>Strickland-Cronic-Fritz</u> analysis.
As demonstrated in Point I, <u>supra</u>, and supported by the
record, following a complete hearing on the <u>gilmore</u>
issue, the trial court found that there had been no
violation.  As such, the <u>Gilmore</u> claim became a non-
issue.  Therefore, there was no reason for appellate
counsel to raise it.  Since Petitioner cannot make the
first showing as required by <u>Strickland</u>, his claim of
ineffective appellate counsel must fail.

    C.   <u>Petitioner's third point</u>.

Petitioner asserts in Point III that he was denied
a fair trial due to a potential conflict of interest
which arose between his own counsel, Ed Belmont,
Esquire, and counsel for a witness, both being
represented by the Mercer County Regional Public
Defender's Office.  He argues that as a result of the
conflict his right under compulsory process to be able
to present a witness in his favor was violated. ...

... At the outset, the court must recognize Mr.
Belmont's extraordinary trial experience.  At the time
of the <u>Ratti</u> trial, Mr. Belmont had been trial counsel
on over 400 cases through jury verdicts, many of them
involving serious crimes such as murder and
manslaughter.  Additionally, during the P.C.R.
evidentiary hearing, the court was impressed by the
intelligent and competent manner in which counsel
discussed the details of case.

Petitioner claims that there is a conflict of
interest due to the fact that a potential witness to
the matter, John Love, was also represented by the
Office of the Public Defender.  Love was being
represented by the Office of the Public Defender in
another matter.  However, Love's testimony was
solicited by Belmont and Love was ordered from the
Mercer County Detention Center by Belmont.
Additionally, Belmont requested time in the holding
room with Love before having Love come into the
courtroom.  Love refused to come to court.  Love
refused to speak with Belmont.  Indeed, as the trial
court attempted to bring Love into court during the
trial, the Sheriff's Officers were unable to get Love
out of his cell. ...

23

Belmont made several attempts to communicate with Love, all of which were rebuffed. As a result of his failure to communicate with this witness, Belmont made an appropriate trial decision not to call Love as a witness. Indeed, he had no other practical choice. As Belmont stated at the evidentiary hearing in this matter: "all of my schooling has taught me, don't put a witness on the stand in any case, especially one as serious as this one, when you do not know what he will testify." The fact that Love and Petitioner were represented by the Public Defender's Office had no bearing upon that decision. In addition, the fact that both Love and Petitioner were represented by the Office of the Public Defender does not automatically create a conflict of interest. In <u>State v. Bell</u>, 90 N.J. 163 (1982), multiple defendants in the same case claimed a conflict of interest as a result of their representation by staff attorneys from the same public defender's office. In affirming the defendant's conviction, the <u>Bell</u> court held that "multiple representation by the public defender does not in itself give rise to a presumption of prejudice." <u>Id.</u> at 169. Instead, the court found that should "circumstances demonstrate a potential conflict of interest and a significant likelihood of prejudice arising from representation of multiple defendants by a public defender's office, presumption of both an actual conflict of interest and actual prejudice will arise, without the necessity of proving such prejudice." <u>Id.</u> at 171. The <u>Bell</u> court found no prejudice to exist under those circumstances and the Court finds none at bar.

Unlike <u>Bell</u>, this case does not involve representation of co-defendants by the same public defender's office. Instead, Love was represented by the Public Defender's Office in a matter completely unrelated to the <u>Ratti</u> case. Furthermore, there has been no claim that Love would have been a favorable defense witness until this late stage in the proceedings. Petitioner is merely making an unsubstantiated assertion that Love told his own attorney that Petitioner was innocent and was advised not to cooperate. However, Petitioner's "conflict" argument is not supported by the evidence.

As the <u>Bell</u> Court held, there is <u>no</u> presumed conflict of interest in situations such as this one.

24

Petitioner has failed to demonstrate that any conflict existed beyond the bare allegations that Love's representation by the Public Defender's Office conflicted with that of Petitioner.  Indeed, this allegation is contradicted by Love's own written statement.  In it, he wrote:

> I talk [sic] with Ed Belmont and his Investigator from time to time.  Notes were written by Belmont and the Inv. at one point I saw Belmont every day of the week.  I told him what is written on these pages word for word.  My lawyer, Mark Catanzaro, said I could talk with them if I wish.  But should think about my own trouble.

This statement is sufficient proof to the court that no actual conflict of interest existed nor can one be demonstrated by Petitioner.

Accordingly, this argument is rejected.

D.   Petitioner's fourth point.

Petitioner, in Point IV, claims ineffective assistance of counsel.  This time Petitioner argues that Belmont was ineffective for failure to request a Wade[] hearing concerning the identification of Petitioner by three witnesses and then failing to move to exclude the out-of-court identifications.  In addition, Petitioner claims that trial counsel was ineffective for failure to conduct any pre-trial investigation. ...

Petitioner asserts that Belmont's performance fell below an objective standard of reasonableness because a Wade hearing was not requested.  However, it has been held that a Wade hearing is not required unless the defendant first makes the threshold showing required by State v. Ortiz, 203 N.J. Super. 518 (App. Div. 1985) of some evidence of impermissible suggestiveness.[7]

---

[7] The Supreme Court has held that a Wade hearing is not required in every case.  Watkins v. Sowders, 449 U.S. 341, 349 (1981).  With respect to an ineffective assistance claim based upon failure to move to suppress identification evidence, a petitioner must show "that he likely would have prevailed on the suppression motion and that, having prevailed, there is a

In the case at bar, Belmont did not request a <u>Wade</u>
hearing due to his inability to make the threshold
showing required by <u>Ortiz</u> of some evidence of
impermissible suggestiveness in the police
identification procedures.  It is important to note
that even in the instant proceeding, Petitioner does
not support his assertion that a <u>Wade</u> hearing was
necessary with any evidence that police identification
procedures were impermissibly suggestive.  In fact, two
of the witnesses knew Petitioner prior to the shooting,
one of them for almost ten years.  The third witness
James Steele, ultimately produced as a defense witness,
recanted his previous identification of Petitioner.
His testimony supported Petitioner's position.
Evidently, it was not persuasive to the jury when
viewed in light of the other witnesses who identified
Petitioner as the murderer.

In deciding the <u>Wade</u> issue, the trial court noted
that for various reasons, including that of
Petitioner's failure to make the requisite showing, no
request for a hearing was made and that none would be
provided.  Instead, Mr. Belmont chose to attack the
credibility of the prosecution's identification
witnesses.  The trial strategy regarding these matters
was thoroughly discussed with Petitioner.  A discourse
between Belmont, Petitioner and the court yielded the
conclusion that Petitioner was satisfied with Belmont's
strategy. ...  Defense counsel made a cognizant
decision to pursue defendant's strategy and did so
after evaluation of all the circumstances.  The court
can find no fault with this course of action.

Next, the court addresses the validity of
Petitioner's claim that trial counsel was ineffective
for failing to conduct any pre-trial investigation with
respect to three separate issues.  The trial counsel
did conduct the appropriate pretrial investigation with

---

reasonable likelihood that he would not have been convicted. ...
In order to determine whether a motion to suppress would have
been granted, we must determine (1) whether the identification
process was unduly suggestive and, if so, (2) whether the
totality of the circumstances nonetheless renders the
identification reliable." <u>Thomas v. Varner</u>, 428 f.3d 491, 502-03
(3d Cir. 2005) (citing, <u>inter alia</u>, <u>Neil v. Biggers</u>, 409 U.S. 188
(1972)).

regard to Love.  Second, a significant amount of time
was spent by trial counsel interviewing Petitioner's
wife and Petitioner as well.  Lastly, as to
Petitioner's claim that a pre-trial investigation would
have discovered all other relevant information
concerning another potential witness, it is noteworthy
that the witness in question had given a formal
statement to the police.  The decision not to conduct
interviews with these witnesses was supported by trial
counsel's strategy to impeach the witnesses by
highlighting discrepancies between their in Court
testimony and their previous statements.  Once again
this constituted a reasonable trial decision by the
trial attorney.  Petitioner has failed to satisfy the
first prong of the <u>Strickland-Cronic-Fritz</u> analysis.
Therefore, Petitioner's arguments asserted in Point IV
are rejected.

(R.14 at 6-16.)

The Counsel Clause of the Sixth Amendment provides that a
criminal defendant "shall enjoy the right ... to have the
Assistance of Counsel for his defence."  U.S. Const. amend. VI.
The right to counsel is "the right to <u>**effective**</u> assistance of
counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)
(emphasis added).

The PCR court correctly identified the controlling federal
law that, to prevail on a claim of ineffective assistance of
counsel, a habeas petitioner must show both that his counsel's
performance fell below an objective standard of reasonable
professional assistance and that there is a reasonable
probability that, but for counsel's unprofessional errors, the
outcome would have been different.  <u>Strickland v. Washington</u>, 466
U.S. 668, 687, 694 (1984).  A "reasonable probability" is "a

27

probability sufficient to undermine confidence in the outcome."
Strickland at 694.  Counsel's errors must have been "so serious
as to deprive the defendant of a fair trial, a trial whose result
is reliable."  Id. at 687.  "When a defendant challenges a
conviction, the question is whether there is a reasonable
probability that, absent the errors, the factfinder would have
had a reasonable doubt respecting guilt."  Id. at 695.

     The performance and prejudice prongs of Strickland may be
addressed in either order, and "[i]f it is easier to dispose of
an ineffectiveness claim on the ground of lack of sufficient
prejudice ... that course should be followed."  Id. at 697.

     There is "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."
Strickland, 466 U.S. at 689.  As a general matter, strategic
choices made by counsel after a thorough investigation of the
facts and law are "virtually unchallengeable," though strategic
choices "made after less than complete investigation are
reasonable precisely to the extent that reasonable professional
judgments support the limitations on investigation."  Id. at 690-
91.  If counsel has been deficient in any way, however, the
habeas court must determine whether the cumulative effect of
counsel's errors prejudiced the defendant within the meaning of
Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d
Cir. 1996).

Here, the PCR court correctly identified the controlling federal law governing the viability of the underlying claim regarding the admissibility of identification evidence.  The PCR court's determination of the facts was reasonable in light of the evidence presented.  The PCR court correctly found no ineffective assistance of trial counsel.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Here, the PCR court correctly identified and applied the controlling federal law regarding the prosecutor's use of peremptory challenges.  The PCR court correctly found no ineffective assistance of appellate counsel.

The conclusion of the PCR court that there was no ineffective assistance of counsel is neither contrary to nor an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on these claims.

D.    Error in State Post-Conviction Relief Proceedings

Petitioner contends that the state PCR courts committed various errors, including imposition of a time-bar on certain claims and failure to provide a hearing.

Errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. See, e.g., Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir.1998), cert. denied, 526 U.S. 1065 (1999) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.... Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'"); Ferguson v. State, 1996 WL 1056727 (D.Del. 1996) and cases cited therein.  Thus, Petitioner is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional issue.  No certificate of appealability shall issue.

## V.   CONCLUSION

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

Garrett E. Brown, Jr.
Chief Judge
United States District Court

Dated: April 5, 2006

31